UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

LUKES SEAFOOD LLC, a Foreign Limited Liability
Company D/B/A LUKE'S LOBSTER

      Defendant.

_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant,

LUKES SEAFOOD LLC, a foreign limited liability company d/b/a LUKE'S LOBSTER

(hereinafter referred to as "LUKE'S LOBSTER"), for declaratory and injunctive relief, and

damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is

codified in 42 U.S.C. §§12181-12189.

1)     This action is also brought pursuant to 28 C.F.R. Part 36.

2)     This Court has jurisdiction over this case based on federal question jurisdiction, as provided

in 28 U.S.C. §1331 and the provisions of the ADA.

3)     Furthermore, because this Court has jurisdiction over the ADA claim, the Court has

supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)     Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act

of 2008, 42 U.S.C. §12101 ("ADAAA").

5)     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase lobster tails.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)     Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017).*

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, LUKE'S LOBSTER, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

20)     Defendant, LUKE'S LOBSTER, is a company that sells seafood. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "LUKE'S LOBSTER".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://lukeslobster.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and

other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)     Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)     Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan his visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)     During the month of October 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

**Luke's Lobster**   https://lukeslobster.com

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 129.0.6668.60

Screen Reader: NVDA v. 2024.3.1

Video Recorder: OBS Studio 30.2.3

**Barriers**

**Missing Descriptions for Non-Text Content:** Images in the carousel, product images in sliders, and buttons in various sections lack alternative text or descriptions. This prevents screen reader users from accessing essential visual content, such as product information and navigation buttons, severely limiting the accessibility of key areas across the website.

**Poor Focus Management:** Focus is often shifted incorrectly or given to hidden elements, such as the Shopping Cart Modal, even when the Shipping Modal is active. This disrupts the logical flow of navigation for users relying on assistive technology, making it difficult to interact with content effectively.

**Inadequate Keyboard Accessibility:** Several elements, including the Collection Slider and Search Form, are not operable via keyboard. This prevents keyboard-only users from fully interacting with or navigating the website, creating significant usability barriers.

**Lack of Screen Reader Feedback:** Screen readers fail to communicate vital information, including product prices, field names in forms, and product details. This leaves visually impaired users without necessary context, hindering their ability to make informed decisions or complete actions like filling out forms or understanding product features.

**Bypass Mechanism Issues:** There is no mechanism for users to bypass repeated blocks of content, such as navigation menus, social media links, and top-page content. This forces keyboard users to manually navigate through repetitive sections, decreasing efficiency.

**Uncommunicated Form Errors:** In forms such as the Checkout Contact Form and Create Account form, screen readers fail to announce input errors, such as invalid email addresses or zip codes. This prevents users from correcting their mistakes and successfully submitting forms.

**Lack of Focus Visibility:** Several interactive elements, especially within navigation menus and the Shopping Cart Modal, do not provide visible focus indicators. This makes it difficult for keyboard users to track their navigation, causing confusion and inefficiency.

**Missing Labels and Instructions:** Forms and navigation elements across the website lack proper labels or instructions, particularly in the Create Account form where users are not informed about required fields, phone number formats, or password requirements. This lack of guidance leads to form submission errors and user frustration.

These barriers collectively hinder the ability of users relying on screen readers, keyboard navigation, and assistive technologies to interact with the website, leading to a frustrating and inaccessible user experience.

**Violation 1: 1.1.1 Non-text Content**

All non-text content that is presented to the user has a text alternative that serves the equivalent purpose, except for the situations listed below. Controls, Input If non-text

content is a control or accepts user input, then it has a name that describes its purpose. (Refer to Success Criterion 4.1.2 for additional requirements for controls and content that accepts user input.) Time-Based Media If non-text content is time-based media, then text alternatives at least provide descriptive identification of the non-text content. (Refer to Guideline 1.2 for additional requirements for media.) Test If non-text content is a test or exercise that would be invalid if presented in text, then text alternatives at least provide descriptive identification of the non-text content. Sensory If non-text content is primarily intended to create a specific sensory experience, then text alternatives at least provide descriptive identification of the non-text content. CAPTCHA If the purpose of non-text content is to confirm that content is being accessed by a person rather than a computer, then text alternatives that identify and describe the purpose of the non-text content are provided, and alternative forms of CAPTCHA using output modes for different types of sensory perception are provided to accommodate different disabilities. Decoration, Formatting, Invisible If non-text content is pure decoration, is used only for visual formatting, or is not presented to users, then it is implemented in a way that it can be ignored by assistive technology.

The images in the carousel at the top of the homepage do not have proper descriptions. This lack of alternative text leaves screen reader users without crucial information about the content being displayed, making it difficult for visually impaired users to understand the purpose or content of the images.

Applicable WCAG 2.1 Standard at Issue: 1.1.1 Non-text Content (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUsAiAE5eK9FqzfjhwYZH4wBLT0TLHhDy9kEa7AiachcZw

## Violation 2: 1.3.2 Meaningful Sequence

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

The Locations Slider is not visible while navigating through the page, causing a disruption in the logical sequence of the content. Users navigating via assistive technology are left confused, as the expected content or elements are not available while navigating, breaking the flow of interaction.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EfpJACp71uhGgBhCkHtvZ48BRZILM1CAx2QVI6n4UQngUg

## Violation 3: 1.3.1 Info and Relationships

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

The "View Product Details" button in the Lobster Slick Slider lacks any information about what product it refers to. Screen reader users are not informed of the product

associated with the button, preventing them from knowing what action they are taking, leading to frustration and confusion.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ec2SlYdRVwVHnp9eR78hzj4BM1-WivH_zdH6jFRwAlQ3EQ

**Violation 4: 1.1.1 Non-text Content**

All non-text content that is presented to the user has a text alternative that serves the equivalent purpose, except for the situations listed below. Controls, Input If non-text content is a control or accepts user input, then it has a name that describes its purpose. (Refer to Success Criterion 4.1.2 for additional requirements for controls and content that accepts user input.) Time-Based Media If non-text content is time-based media, then text alternatives at least provide descriptive identification of the non-text content. (Refer to Guideline 1.2 for additional requirements for media.) Test If non-text content is a test or exercise that would be invalid if presented in text, then text alternatives at least provide descriptive identification of the non-text content. Sensory If non-text content is primarily intended to create a specific sensory experience, then text alternatives at least provide descriptive identification of the non-text content. CAPTCHA If the purpose of non-text content is to confirm that content is being accessed by a person rather than a computer, then text alternatives that identify and describe the purpose of the non-text content are

provided, and alternative forms of CAPTCHA using output modes for different types of sensory perception are provided to accommodate different disabilities. Decoration, Formatting, Invisible If non-text content is pure decoration, is used only for visual formatting, or is not presented to users, then it is implemented in a way that it can be ignored by assistive technology.

The images of products within the Lobster Slick Slider lack proper descriptions. This omission deprives visually impaired users of essential context and product information, as the screen reader does not describe what is being shown in each slide.

Applicable WCAG 2.1 Standard at Issue: 1.1.1 Non-text Content (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EaQN7yxjydhCs1FQJJoXcbcBxblFwu7d3T-_0B1BLGzvkQ


**Violation 5: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

The Search Form is not properly navigable using the keyboard, and users are unable to access or operate the search field. This lack of clear instructions on how to navigate the search form impedes users relying on keyboard or assistive technologies from performing basic searches on the site.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERsvqxUU4JJBseUt55dh_8IBLivfNnKuo-

SgXPX4ScFydA


### Violation 6: 2.4.3 Focus Order

If a Web page can be navigated sequentially and the navigation sequences affect meaning

or operation, focusable components receive focus in an order that preserves meaning and

operability.

In the Search Results page, focus is given to the skip to content link after the user

navigates most of the top sections on the page. In addition, focus is also given to the

cookies modal before the skito to content link.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/search?q=lobster+meat

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EV9e18eJ55tIhoPpooJhPkMB_VpxJOu9zlQU

p_dJMkiQCA


### Violation 7: 1.3.1 Info and Relationships

Information, structure, and relationships conveyed through presentation can be

programmatically determined or are available in text.

The product price information in the search results is not communicated by the screen reader. This prevents visually impaired users from receiving important details about the price, hindering their ability to make informed purchasing decisions.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/search?q=lobster+meat

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUH9wLou9wdIqjQGuF39rkYBVqVgAfTwI vrkfLYWpLp52w


**Violation 8: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

Navigation Menu elements on the search results page do not have visible focus. This makes it difficult for keyboard users to know which item they are focused on while navigating the menu, causing navigation challenges.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://lukeslobster.com/search?q=lobster+meat

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EXEuefL5UxpFmDFoFqKKbrEBehViVyrBo D2z3rI0dl8MUA

**Violation 9: 1.1.1 Non-text Content**

All non-text content that is presented to the user has a text alternative that serves the equivalent purpose, except for the situations listed below. Controls, Input If non-text content is a control or accepts user input, then it has a name that describes its purpose. (Refer to Success Criterion 4.1.2 for additional requirements for controls and content that accepts user input.) Time-Based Media If non-text content is time-based media, then text alternatives at least provide descriptive identification of the non-text content. (Refer to Guideline 1.2 for additional requirements for media.) Test If non-text content is a test or exercise that would be invalid if presented in text, then text alternatives at least provide descriptive identification of the non-text content. Sensory If non-text content is primarily intended to create a specific sensory experience, then text alternatives at least provide descriptive identification of the non-text content. CAPTCHA If the purpose of non-text content is to confirm that content is being accessed by a person rather than a computer, then text alternatives that identify and describe the purpose of the non-text content are provided, and alternative forms of CAPTCHA using output modes for different types of sensory perception are provided to accommodate different disabilities. Decoration, Formatting, Invisible If non-text content is pure decoration, is used only for visual formatting, or is not presented to users, then it is implemented in a way that it can be ignored by assistive technology.

The product images in the Lobster Roll Bundle carousel lack proper alternative text or descriptions, making it impossible for screen reader users to understand what is being visually presented. This creates a significant barrier for visually impaired users.

Applicable WCAG 2.1 Standard at Issue: 1.1.1 Non-text Content (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-

8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYIzliq-

GaZDh3l5jQFINesBb1oQOpQLF1nQlYffj5nubA


**Violation 10: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be

programmatically determined or are available in text.

The product description and shipping information in the Lobster Roll Bundle section are

not conveyed by the screen reader. This lack of communication leaves screen reader users

without critical information about the product and its delivery details.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-

8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUg-

xfqqRotNiiY2x69P43cBMgeqRSrE1vZ7rh6eZhAmdw


**Violation 11: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

After focusing on the "Price Review" link in the Product Introduction section, focus is incorrectly shifted out of the section, preventing users from accessing essential product information, modifying quantity,

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ESDamFQCI71DpvAI4e-M_6cBQstHWgVv6JCIlT7z_kOTTg

**Violation 12: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages

There is no bypass block mechanism available to skip all content that follows the Product introduction section and return to the main content. This forces users to manually navigate through all elements, causing inefficiencies, especially for those relying on keyboard navigation.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-

8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQUHqyk6ssZJkVKhrd0fk2wBg4pSbcn1T0

W11j3yM13_0g


**Violation 13: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading

sequence can be programmatically determined.

Users can navigate elements on the Shopping Cart Modal while it is not visible, which

breaks the logical sequence of interaction and creates confusion, particularly for users

relying on assistive technologies.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-

8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETEg5iiuMYxLq0WxKSw0ytABTov-

OyAaEZ8MhzVpJf8J5w


**Violation 14: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

After interacting with the footer section, the focus is incorrectly shifted to the "invisible" Shopping Cart Modal instead of the top page elements, causing confusion for users and breaking the expected navigation order.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETF-SWmpTcVDp8M_udgD9pYB0pjh0fh3y3NvF4tJyArwIg


**Violation 15: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not communicate when the product quantity has been incremented using the "Increment" button in the Shopping Cart Modal, leaving users unaware of changes to the cart's content.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUUOSRc36G9HqdmDTCynyyQBEbG8N4u6Tb1GWdCkk9lrlQ


**Violation 16: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

After pressing the "Calculate" button in the Shipping Modal, the screen reader does not communicate any error messages related to the zip code field validation, leaving users unaware of issues that may need to be addressed.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQ_dKeXSC_1EieWXXMpijzgBJSOiNLAQQoxYC_mcbxwUjQ


**Violation 17: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

Users are allowed to navigate the Shopping Cart Modal while it is not visible, disrupting the intended sequence of actions and causing confusion for users interacting with the page via assistive technology.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ET-icKssahtBtraNWySk7A8B0AHnXET6VbW7eMI8cxyTBg

**Violation 18: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus is incorrectly given to the Shopping Cart Modal, which is not visible as the Shipping Modal is still active and on top. This creates a confusing experience for users relying on assistive technology, as they cannot interact with the Shopping Cart Modal while it remains hidden behind the Shipping Modal.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-

8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ESKbGWz3PGdGswqs1feDRE0BeTCa0tjB2r

JqL8smquQAUg


**Violation 19: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus

indicator is visible.

None of the elements in the Shopping Cart Modal have visible focus indicators, making it

difficult for users to know where they are while navigating the modal using the keyboard.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-

8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ESV2wigx8Q5Gqs5ljvklmsUBYuWyeT6q0dz

tdNWQo2W9LA


**Violation 20: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be

programmatically determined or are available in text.

The buttons in the calendar within the Shopping Cart Modal are not described by the screen reader, leaving users unsure of the purpose of each button, hindering their ability to interact with the calendar.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/products/lobster-roll-bundle-serves-8?_pos=3&_sid=644d94fc9&_ss=r

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETcUYPziJmxPt6LbCeLaFkcB_vbv8vww2zUvUqvP-ewnTA


**Violation 21: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The screen reader does not properly detect or communicate the presence of an invalid whitespace character in the email field on the Checkout Contact Form, leading to submission errors and user frustration.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/checkouts/cn/Z2NwLXVzLWVhc3QxOjAxSkFDFDOFdQQTA3Q0FXVzRIWDRRVjFFSlM2/information?locale=en

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVVYfXdTbxFCqfDoJHVFg_sB_cR2ZVTG DcyP8CbAtpNIPw

**Violation 22: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The screen reader fails to inform the user of an invalid zip code error message in the Shipping Address form, preventing users from correcting the error and completing the form.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/checkouts/cn/Z2NwLXVzLWVhc3QxOjAxSkFFDOFdQQTA3Q 0FXVzRIWDRRVjFFSlM2/information?locale=en

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcAyedRNWPlNtOKqV8LjF4wBj7jvoW3Fg- NkkDkO_u9glw

**Violation 23: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The screen reader does not properly detect or communicate the presence of an invalid whitespace character in the email field during account login, causing login failures for users.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/account/login?checkout_url=%2Fcheckouts%2Fcn%2FZ2NwL

XVzLWVhc3QxOjAxSkFDFOFdQQTA3Q0FXVzRIWDRRVjFFSlM2%3Fcompany_loc

ation_id%26locale%3Den-US

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQVHLydEl9VJoGjnKMGuRnMBE7xHPy0

KvnyPxLwyWs3TGA


**Violation 24: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be

programmatically determined or are available in text.

The names of fields in the "Create Account" form are not communicated by the screen

reader, leaving users without critical information on what each field represents, hindering

their ability to complete the form.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/account/register?checkout_url=%2Fcheckouts%2Fcn%2FZ2Nw

LXVzLWVhc3QxOjAxSkFDFOFdQQTA3Q0FXVzRIWDRRVjFFSlM2%3Fcompany_lo

cation_id%26locale%3Den-US

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVwpgm4bp4tCoXlSwCLNeoUBy2QrtAp9P

QqrkSlgPA_fxQ

Violation 25: 3.3.1 Error Identification

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The "Create Account" form does not provide error messages when invalid values are entered in the email, phone, and password fields, leaving users unaware of the issues and preventing them from correcting their input.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/account/register?checkout_url=%2Fcheckouts%2Fcn%2FZ2Nw LXVzLWVhc3QxOjAxSkFDFDOFdQQTA3Q0FXVzRIWDRRVjFFSlM2%3Fcompany_lo cation_id%26locale%3Den-US

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUmnDI7nEvBFiVBqpgEPhTYBuuUBW18i_ R9uyplR7bLMfA


**Violation 26: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

The "Create Account" form does not provide instructions on the required format for phone numbers or the minimum password requirements, leaving users uncertain about how to correctly input this information, leading to frustration and potential form submission failures.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://lukeslobster.com/account/register?checkout_url=%2Fcheckouts%2Fcn%2FZ2Nw

LXVzLWVhc3QxOjAxSkFDDOFdQQTA3Q0FXVzRIWDRRVjFFSlM2%3Fcompany_lo

cation_id%26locale%3Den-US

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZ0yAiPgV3dGmij3jhoaTmQBCiBgcl8HKPz

MMRzvTP7Lgg

30)     Although the Website appeared to have an "accessibility" statement displayed and an
"accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested,
still could not be effectively accessed by, and continued to be a barrier to, blind and visually
disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted
to access the statement, thus, was unable to receive any meaningful or prompt assistance through
the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively
navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling
excluded, as he is unable to participate in the same shopping experience, with the same access to
the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical
locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are
removed or remedied, to patronize one or more of Defendant's physical stores and to use the
Website, but he is presently unable to do so as he is unable to effectively communicate with
Defendant, due to his severe visual disability and the Website's access barriers. Alternatively, as
a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and

communicate with Defendant through the Website due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)    On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)    On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)    On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)    On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)    On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)    On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)    On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)    Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)    Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an

information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42) The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43) Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44) Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45) Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46) The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47) Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48) Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.


**COUNT I – VIOLATION OF THE ADA**

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating

30

the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has

made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in October and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in

accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

    i.     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.      Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.      Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.      Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)      WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.      A declaration that Defendant's website is in violation of the ADA;

b.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and

effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

---

[1] 

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

**COUNT II – TRESPASS**

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)    Defendant's website contains software analytics.  Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)    Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)    The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)    Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)    Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80)    On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

OTHER INFORMATION

"Other Information" is any information that does not reveal your specific identity or does not directly relate to an individual, such as:

Browser and device information, including device ids, advertising ids, and other persistent identifiers, such as your IP address. Your IP address is a number that is automatically assigned to the computer that you are using by your internet service provider (ISP).

Information collected through cookies, pixel tags and other technologies, such as the actions taken within and outside of the websites and apps and the date and time of your use of the websites and apps

Demographic information such as your gender or city and other information voluntarily provided by you

Aggregated information

### HOW WE MAY COLLECT OTHER INFORMATION

We and our third-party service providers may collect Other Information in a variety of ways, including:

Through your browser or device: certain information is collected by most browsers or automatically through your device, such as your media access control (mac) address, computer type (windows or macintosh), screen resolution, operating system name and version, device manufacturer and model, language, internet browser type and version and the name and version of the Services you are using. We use this information to ensure that the Services function properly.

Using cookies: cookies are pieces of information stored directly on the computer that you are using. Cookies allow us to collect information such as browser type, time spent on the Services, pages visited, language preferences, and other anonymous traffic data. We and

our service providers use the information for security purposes, to facilitate navigation, to display information more effectively, and to personalize your experience while using the Services. We can recognize your computer to assist your use of the Services. We also gather statistical information about the usage of the Services in order to continually improve the design and functionality, understand how the Services are used and to assist us with resolving questions regarding the Services. Cookies further allow us to select which of our advertisements or offers are most likely to appeal to you and display them while you are on the Services. We may also use cookies in online advertising to track responses to our advertisements.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.


WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.


Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630

Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434